We'll move to our final case of the day. This is Appeal No. 20-2639, Martell Flippins v. Wexford Health Sources. We'll begin with argument from the appellant, Mr. Hasen. Thank you, Your Honor. I'm Eldon Hasek, counsel for the plaintiff appellant Martell Flippins, and I would please ask the court to reserve three minutes for rebuttal. In the district court, Mr. Flippins was pro se, and he filed a lawsuit after two years of denial of a hernia surgery that had been recommended by the prison doctor. His case was dismissed for not responding to a show cause order, but the show cause order was sent to the wrong address. During the pendency of the lawsuit, Mr. Flippins was released from prison, and he changed addresses multiple times. And in February 2020, page five of the short appendix, Mr. Flippins asked that the court use a more permanent mailing address in Gary, Indiana, which was his mother's house, instead of the halfway houses where he had been living and had changed addresses multiple times. But the court, the clerk of the court, did not update the docket with that address and instead used the address where he had mailed it from. And from that point forward, Mr. Flippins did not receive case documents from the court. The only document he received was a notice of withdrawal from one of the attorneys for one of the other parties who had used the address that he had put in the body of his letter. And so when the court... Is that the same attorney he then contacts for an update on the case? So it was a different attorney because that attorney withdrew. Okay. I don't recall who that attorney had represented. There were multiple defendants in the case at that point. And that was in May of 2020. So the district court had been closed because of COVID. That also happened at that time. And so when the court essentially reopens in June, the judge issued a show cause order, but it was mailed to the wrong address. And then when the court didn't receive a response, it issued a second show cause order titled a notice of impending dismissal, which was also mailed to that incorrect address in Chicago. And so Mr. Flippins never received these show cause orders that were never sent to the correct address. And so we therefore asked the court to reverse the dismissal and restate the court because he never received notice of the dismissal. Now under this court's precedence, namely the Johnson case, a pro se plaintiff, a district court cannot dismiss a pro se plaintiff's case for want of prosecution without giving a explicit warning that the case may be dismissed for not following orders. But in this case, the orders were never received. And that is the key problem. Should it matter at all here that a Rule 60 motion was never filed before the district court to have the district court cure any potential error? Because it doesn't look like the court was aware of this error. So I agree, Your Honor. So in the order of dismissal, it appears that the court is under the impression that its show cause orders were sent to this. So I don't think it should matter that a Rule 60 motion was not filed. Mr. Flippins could have filed a Rule 60 motion and perhaps that could have cured this error in the district court. But he chose to file an appeal instead, and it was appropriate to file an appeal because there was a final order. A final judgment was issued and he filed it timely. And so there is no issue with this court taking jurisdiction of this appeal or any preliminary step. The Rule 60 option could have been used, but again, Mr. Flippins was pro se, and he instead chose to file an appeal, which was perfectly fine under the rules. Do you want to address, Mr. Hesek, the prejudice question? Whether or not the defense here has been prejudiced as a result of any delays that Mr. Flippins might have been responsible for? Sure. So, we cite the Palmer case in our briefing. In the Palmer case, this court said that a delay of nine months is considered young, that the dismissal after nine months for failure to prosecute is too soon. Now in our case, it's 14 months. I think it's important to note that within that 14 months, the last three or four months cover the COVID pandemic, where there were inherent delays to the court system. And we also have, so the case started, the lawsuit was filed in May of 2019. Mr. Flippins stopped receiving notice in February. And so any time after February would not, it's not his fault, since he wasn't receiving notice of the proper address. And I think that the question of prejudice really goes to loss of evidence, loss of witness testimony, things of that sort. But in a case of this kind, the defendants hold all the evidence. They have the medical records because it's within the prison system and what they have. They're aware of the lawsuit. They're aware of the grievance and the claims. And so they're basically under a duty to preserve evidence and witness testimony. So there's really not a prejudice to the defendants in that regard. Additionally, the motion that Mr. Flippins did not respond to was a summary judgment motion filed by the Illinois State defendants who are no longer in the case. They filed a motion on the issue of exhaustion. The Wexford defendants were the last remaining defendants in the case, did not join that And so I think that also goes to the question of prejudice, is that in essence, when the court dismissed the entire case, the Wexford defendants received a windfall because they never moved to dismiss the case in summary judgment. The case simply went away. And so it would be unfair to call this prejudice when they basically got a free dismissal. So we asked the court to remand the case back so that Mr. Flippins has an opportunity to repeat the merits of this case. And the court, because the court can and should correct this, occurred and Mr. Flippins suffered as a result of. And I would reserve, unless there's further question, I would reserve the remainder of my time. Very good. Thank you very much, Mr. Hasek. Ms. Meltzer, we'll now move to you for argument on behalf of the appellee. Thank you very much, Your Honors. Good afternoon. My name is Catherine Meltzer on behalf of the appellees. May it please the court, this is a case about personal responsibility and the responsibility that every litigant, regardless of their represented status, has to the district court to prosecute the case that they filed and to adhere to the court's orders. Mr. Flippins did not prosecute the case that he brought when he filed it on May 16, 2019. He ignored a motion for summary judgment on exhaustion of administrative remedies filed by the Illinois Department of Corrections. He then did not adhere to the court orders to ensure that the district court had his most up-to-date address, and he did not respond to the court's show cause orders. How can you say that, given his letter to the court that clearly included the proper address? I believe, Your Honors, referring to his February 7, 2020 change of address, which is the crux of this case. I can say that because the, excuse me, the February 7, 2020 change of address was signed Martel Flippins at a Huron Street address in Chicago. But it makes clear in the body of it that he has moved and that his permanent address is in the body, not below the signature. Your Honor is focusing on the second line of the February 7 change of address, but I believe it was the first line of the February 7 change of address, which actually says, I moved to a different halfway house still located in Chicago. And then he signed it Martel Flippins from the Huron Street address in Chicago, Illinois. He had moved two prior times, one to a Calumet City address and one to an address at 113 Place. In both of those prior changes of address, he had signed the change of address from the location that he was. So, I believe it was absolutely reasonable for the district court and the district clerk to believe that he was sending this change of address from the Huron Street address in Chicago and to believe that that was his correct address. If we agree with him that he correctly sent the change of address in and that it was just docketed wrong, an honest mistake, but a clerical mistake at the district court level, do agree we should send it back? No, I do not agree that the court should send it back. And the reason for that is Mr. Flippins still retained a duty to monitor his own case. He was released, I believe it was, in August of 2019. He was no longer incarcerated. He had access to the court's online docket. We know he had access to the internet and I believe that it is still his responsibility as litigant to monitor his case, to be aware of what's happening in his case, and to prosecute his case. And he did not do that. It appears that after he filed his change of address then he did nothing with the case to check what was being filed, what was happening. He apparently didn't call the clerk or call the court and ask what was going on. He did nothing to prosecute his case and that, I think, is why it should not be sent back even if this court does accept that there was an error made by the district clerk with the mailing address. If the defendants had taken this amount of time, would a default have been entered against them? Taken the amount of time to respond to a court order or respond to, yes, I believe so. I think the court would have entered default against the defendants. If my clients had ignored the court for over 300 days, I think we would be in a lot of trouble. How do you get 300 days? I believe it was 318 days from the time that Mr. Flippins, and it's located in my brief, and I apologize for not having the page in front of me, but there was a 300-day period of time when Mr. Flippins did not respond to any of the court orders. It's page 7 of my brief. Flippins effectively abandoned his lawsuit having been given 318 days until the district court properly dismissed it with prejudice for failure to prosecute. Anything further, Ms. Meltzer? Yes, the standard for the district court's dismissal is an abuse of discretion standard, and that should only be overturned if the actions of the district court were considered fundamentally wrong, I believe, as the Johnson case. District courts have the inherent ability and the inherent authority to manage their own dockets. They should be allowed to control. They are the most familiar with their dockets, their caseloads, and the litigants before them. So I believe that this was not an abuse of discretion by the district court to dismiss Mr. Flippins' case under Rule 41B for both the failure to prosecute and the failure to respond to the motion for summary judgment, because those were actually, there were two reasons why Mr. Flippins' case was dismissed. It wasn't just the failure to respond to the show cause, but it was the failure to respond to, excuse me, the failure to respond to the motion for summary judgment. Mr. Flippins did have four explicit warnings prior even to the February 7th change of address filing of what would happen to his case if he failed to keep the district court aware of his address and failed to respond to a motion for summary judgment. He received all of those warnings well before the whole issue or the whole question of whether the district court had his correct address, which, of course, it is our position that the district court was under no burden to investigate his whereabouts. The district court very reasonably believed he was at the Huron Street address in Chicago when they sent his mail to him. There was a question during appellant's presentation regarding prejudice, and it would further be my position that yes, my clients would be prejudiced if this case were sent back. I believe the argument was that the defendants hold all of the evidence. I would respectfully submit that Mr. Flippins is a considerable piece of evidence because this is a medical malpractice, I should say it is an Eighth Amendment deliberate indifference case involving medical care, involving deliberate indifference in medical care, and Mr. Flippins is the one who is requesting the medical care. Mr. Flippins is the one that would be requesting compensatory damages. Mr. Flippins would be the one who asserts that he would be requesting punitive damages for the failure to provide him medical care. So how he is doing medically is very much a part of the evidence. And Mr. Flippins now, excuse me, I would strike that, I would say that my clients would be considerably prejudiced if this case were sent back because so much time has elapsed since this case was filed in May of 2019. Witnesses' memories fade, evidence can be lost, witnesses can be hard to locate or unable to be located, so there would be prejudice suffered by my clients. Do we know if the doctors involved here are still employed? I believe the two physicians and the nurse practitioner are still employed, although I do believe one of the physicians is currently in the country of India. The final point that I would like to make is that in the appellant's presentation there was discussion of, again, whether Mr. Flippins was entitled to receive an explicit warning, although I do say that he did receive four explicit warnings prior to the district court's decision. The explicit warning standard was softened in the Fisher v. Singular Wireless case, in the I. Schaeffer case. Even pro se litigants are not entitled to an explicit warning of their dismissal, and their pro se status does not, I would argue, does not come into the equation. If there are no further questions from the panel, I... Thank you very much, Ms. Belser. Thank you very much. Mr. Hasek, I'll recognize you for rebuttal. Thank you, Your Honor. We addressed a lot of the points that were made in my reply brief, but I would just like to make a few points with my remaining time. Regarding the question of personal responsibility, Mr. Flippins prosecuted his case. He diligently submitted change of address forms three times, and the 300-day calculation is from August 2019, or I'm sorry, from May 2019, I'm sorry. September of 2019. September 2019, thank you, Your Honor. September. Through August, so it's basically the pendency of the lawsuit, but in February, that's when Mr. Flippins submitted the letter on page five that we discussed. So under any calculation of delay, it would not be fair to count that period because he's not receiving anything from the court after that point. And clearly, his action to respond to the court's orders about the importance of updating his address shows his engagement in the case. Regarding the comment about four other warnings that were given, I think that is misunderstanding the standard. So what the law of the Seventh Circuit requires is that a warning be given before a case is dismissed under Rule 41 for failure to prosecute. So what the defendants are pointing to is the four warnings. The first is the initial order where the court said expectations for Mr. Flippins and instructed him about the importance of updating his address. The second is the initial finding of merit for his claim to proceed. So those were not Rule 41 documents. And the last one is the actual summary judgment that was filed by the state defendants, but the warning must come from the court. It can't be given by a party. And so I think it's important to stick to the law under Johnson and some of the other cases we cited that are specific about what the warning should contain. Regarding the standard review question, in our brief we addressed in the alternative, we do brief it under the abuse of discretion standard, and we rely on the cases of Bell and Sroga. Now those are cases where this court overturned dismissals due to uncertainty about whether the plaintiffs had received notice prior to dismissal. In our case, we have objective proof that Mr. Flippins did not receive notice at his preferred address. And I asked the court to take a look at the document on page 5 because he expressly uses the term, my more permanent mailing address, and I think the use of the word mailing makes it clear. Mr. Flippins was pro se, and he was proceeding in form of papyrus, and it would be unfair to pro se defendants to impose strict obligations to monitor the docket using computer technology and things that not all pro se plaintiffs would have access to. Mr. Flippins in this case was clearly relying on mail service. He never consented to electronic service, and therefore the court, the clerical error caused the dismissal. Mr. Flippins relied on the mail system to receive notice about his case. Thank you, Your Honor. Thank you, Mr. Hasek. Thank you, Ms. Belzer. The case will be taken under advisement. That will close our hearings for today.